IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JACKIE A. SHORT,                    §
                                    §
            Plaintiff,              §
                                    §
v.                                  §          NO. 3:11-cv-713-N-BN
                                    §
MICHAEL J. ASTRUE,                  §
Commissioner of Social Security,    §
                                    §
            Defendant.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jackie A. Short seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated

herein, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including

diabetes, depression, and anxiety. After her applications for disability and

supplemental security income ("SSI") benefits were denied initially and on

reconsideration, Plaintiff requested a hearing before an administrative law judge

("ALJ"). Two hearings were held in this case – an initial hearing on April 14, 2008 and

a supplemental hearing on September 25, 2008. At the time of the second hearing,

Plaintiff was 37 years old. She is a high school graduate and has past work experience

as a teacher's aide, child-care attendant, and medical clerk. Plaintiff has not engaged

in substantial gainful activity since July 1, 2004.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffers from diabetes mellitus, degenerative joint disease of the left hip, a bipolar disorder, and an anxiety disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work but could not return to her past relevant employment. Relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was capable of working as a photo-copy machine operator, a cutter-paster of press clippings, and an addresser – jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on four general grounds: (1) the Commissioner failed to provide a complete administrative record to the Court; (2) the ALJ failed to properly evaluate all of Plaintiff's impairments; (3) the ALJ erred in giving significant weight to the testifying medical expert's opinion; and (4) the finding that Plaintiff can perform other work in the national economy is not supported by substantial evidence.

The Court determines that the hearing decision should be affirmed in all respects.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.    The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.    The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.    The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.    If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007)

("In evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that

additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

*Commissioner's Failure to Provide Complete Record*

Plaintiff first contends that this matter should be remanded based on the Commissioner's failure to file a complete transcript of the administrative record, specifically a copy of the Addendum to her Request for Review ("Addendum") to the Appeals Council that included: (1) a brief; (2) a report from a February 12, 2008 psychological evaluation performed by Carla Herren, Ph.D.; (3) Dr. Herren's April 29, 2008 letter regarding certain errors in the February 2008 report; and (4) additional medical records from Plaintiff's treating sources, Dallas Metrocare and Dr. Manuel Rivero. Plf. Reply App. [Dkt. No. 31-1] at 1-41. Although the Commissioner initially disputed that Plaintiff actually filed the Addendum with the Appeals Council, Plaintiff has submitted a copy of the Addendum bearing a "RECEIVED" stamp dated January 5, 2009. *See* Dkt. No. 31-1 at 1.

The Commissioner is required to file with the Court "a certified copy of the transcript of the record." *See* 42 U.S.C. § 405(g). The failure to include the Addendum in the transcript of the record for this case was error. *See Ranes v. Astrue*, No. 3:08-cv-2030-D, 2009 WL 2486037, at *2 (N.D. Tex. Aug. 14, 2009). However, remand

is not warranted on the basis of this procedural error because Plaintiff has provided a copy of the missing evidence, and the record before the Court is complete. *See id.* (remand not warranted where plaintiff corrected Commissioner's error by providing the Court with copy of missing documents).

Nor is remand required because the Appeals Council may have failed to consider the additional evidence included in Plaintiff's Addendum. The Social Security Act, read in conjunction with the enabling regulations, requires the Appeals Council to consider new evidence presented for the first time in a request for review. *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003) (citing 20 C.F.R. § 404.970(b)); *see also Carry v. Heckler*, 750 F.2d 479, 486 (5th Cir. 1985) (all evidence, including new evidence, must be reviewed by the Appeals Council in making its decision). But new evidence justifies a remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003); *Moore v. Astrue*, No. 3:07-cv-2017-B, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009), *rec. adopted*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). Evidence is "material" if: (1) it relates to the time period for which the disability benefits were denied and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *See Moore*, 2009 WL 5386134, at *3. If, as in this case, new evidence is presented while the case is pending review by the Appeals Council, the Court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence. *See Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006); *see also Jones v. Astrue*, 228 F. App'x 403, 406-07 (5th Cir. 2007) (warning

against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard).

Here, the evidence included in Plaintiff's Addendum is not material; rather, it is merely cumulative of other record evidence. In particular, Dr. Herren's February 2008 report, which notes Plaintiff has a full scale IQ score of 71 and "functions in the borderline range of intelligence," is substantially similar to the same doctor's June 2008 report that noted identical IQ scores and arrived at a consistent diagnosis. *Compare* Dkt. No. 31-1 at 15-17, *with* Administrative Record [Dkt. No. 20] at 755-60. The ALJ considered Dr. Herren's June 2008 report in his written decision and expressly declined to find any severe mental impairments other than bipolar disorder and anxiety disorder.

In a thorough and well-reasoned opinion, the ALJ explained that Plaintiff's IQ scores were inconsistent with other evidence of her intellectual functioning, including evidence that she completed high school, reads on a high-school level, and has performed work at the semi-skilled level. Administrative Record [Dkt. No. 19] at 19. Dr. Herren's February 2008 opinion that "[p]ersonality testing . . . shows [Plaintiff] to be functioning at a low level of efficiency [and it] appears all she is able to do is take care of her own basic needs," as well as the Dallas Metrocare supplemental records that show Plaintiff's GAF score was 43, are similarly cumulative of the psychologist's June 2008 opinion that assessed Plaintiff's GAF at 50.[1] *Compare* Dkt. No. 31-1 at 17,

---

[1] GAF, or global assessment of functioning, is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698,

19, 23, 32, 37, *with* Administrative Record [Dkt. No. 20] at 760. The ALJ declined to give significant weight to such assessments of Plaintiff's mental functional capacity in light of issues with her credibility, including illicit drug use and noncompliance with prescribed medications and treatment recommendations. Administrative Record [Dkt. No. 19] at 17, 19. Likewise, the Dallas Metrocare records in the Addendum, which document Plaintiff's report to her treating psychiatrist that she had been sexually assaulted in February 2008, are cumulative of Plaintiff's own hearing testimony that the ALJ heard and considered. *Compare* Dkt. No. 31-1 at 32, 37, *with* Administrative Record [Dkt. No. 19] at 42-43.

The Court cannot conclude that the Addendum evidence would have changed the outcome of the disability determination. Any failure by the Appeals Council to consider it is harmless. *See Price v. Astrue*, No. 3:09-cv-1275-BD, 2011 WL 888260, at *3-4 (N.D. Tex. Mar. 11, 2011) (cumulative evidence is not material evidence that justifies a remand).

---

700 n.2 (5th Cir. 2001). The GAF scale ranges from 100, denoting superior functioning, to 1, indicating that the patient is in persistent danger of severely hurting herself or others, has a persistent inability to maintain minimal personal hygiene, or has engaged in a serious suicidal act with a clear expectation of death. *See* AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. text rev. 2000). A GAF rating of 41 to 50 indicates: "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

*Plaintiff's Vocationally Significant Impairments*

Plaintiff also contends that the ALJ failed to properly consider all of her vocationally significant impairments. More specifically, Plaintiff argues that the ALJ's assessment of her mental residual functional capacity lacked sufficient detail and failed to accommodate the specific finding that her mental impairment resulted in a "moderate" restriction in the area of concentration, persistence, or pace. Plaintiff argues the ALJ was required to expressly incorporate such a limitation into her RFC assessment and include it in the hypothetical question posed to the vocational expert.

A person's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. 20 C.F.R. § 404.1545. A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. Jul. 2, 1996). The ALJ is responsible for determining a claimant's RFC before considering step four of the sequential evaluation process if the claimant is at the ALJ hearing level. 20 C.F.R. §§ 404.1546(c), 404.1520(e), and 416.920(e). In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. 20 C.F.R. § 404.1545(a) (3). The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered. SSR 96-8p, 1996 WL 374184, at *3-*5.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations

and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In this case, the ALJ determined that Plaintiff could perform other work that exists in significant numbers in the economy based, in part, on his finding that Plaintiff had the physical RFC to perform a limited range of light work and the mental RFC to understand and carry out simple instructions and adapt to a routine work environment, but the ALJ required no more than superficial contact with the public and only incidental interaction with her coworkers and supervisors. Administrative Record [Dkt. No. 19] at 14. In support of his RFC assessment, the ALJ considered the medical evidence of record, including reports from Plaintiff's treating sources and consultative examiners, and testimony from two administrative hearings. *See id.* at 16-19. Records from Dallas Metrocare reflect that Plaintiff was diagnosed with major depressive disorder and anxiety disorder but that her treating sources recommended that she participate in volunteer work. *See* Administrative Record [Dkt. No. 20] at 677,

683. The ALJ explained that this recommendation suggests that medical professionals believed some sort of work activity would benefit Plaintiff. *See* Administrative Record [Dkt. No. 19] at 16. Dr. Herren 's June 2008 report similarly stated that Plaintiff had been diagnosed with panic disorder without agoraphobia, a bipolar disorder, borderline intellectual functioning, borderline personality traits, and dependent personality traits. *See* Administrative Record [Dkt. No. 20] at 759. However, Plaintiff was under no limitation in her ability to understand and carry out simple instructions and had only "moderate" limitations in her ability to interact appropriately with the public, coworkers, and supervisors and in her ability to respond appropriately to normal work situations and changes in a routine work setting. *Id*. at 762-63. Dr. Herren specifically noted that Plaintiff had no obvious concentration problems. *See id*. at 759. This explanation complies with the regulations as it shows that the ALJ considered the appropriate limitations and restrictions imposed by all of Plaintiff's impairments.

To the extent that Plaintiff argues that the ALJ found that Plaintiff had "moderate" restrictions with regard to concentration, persistence, or pace that were not expressly included in the RFC finding, *see* Administrative Record [Dkt. No. 19] at 14, her argument is not well-taken. The ALJ made his finding with regard to the category of "concentration, persistence, or pace" as part of his discussion of the "paragraph B" criteria of the psychiatric review technique. *Id*. The ALJ explained:

> The limitations identified in the "paragraph B" criteria are *not* a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the

> sequential evaluation process requires a more detailed
> assessment by itemizing various functions contained in the
> broad categories found in paragraph B of the adult mental
> disorders listing in 12.00 of the Listing of Impairments (SSR
> 96-8p). Therefore the following residual functional capacity
> assessment reflects the degree of limitation the undersigned
> has found in the 'paragraph B' mental function analysis.

*Id.* (emphasis added). Thus, the ALJ did consider the "paragraph B" limitation of moderate restriction in the area of concentration, persistence, and pace, and he included it, by its degree of limitation, in limiting Plaintiff to jobs that require simple instructions.

Plaintiff argues that limiting an individual to jobs that require simple instructions does not incorporate moderate difficulties in concentration, persistence, and pace. However, she fails to cite to any Fifth Circuit case law that supports her argument. To the extent Plaintiff relies on *Voyles v. Astrue*, No. 3:10-cv-652-B, 2011 WL 825711 (N.D. Tex. Feb. 16, 2011), the Court notes that more recent decisions by other courts in this jurisdiction, including the magistrate judge that decided *Voyles*, have not followed the decision. *See Downing v. Astrue,* No. 2:11-cv-170, 2012 WL 4354928, *5 (N.D. Tex. Sep. 7, 2012), *rec. adopted,* 2012 WL 4354915 (N.D. Tex. Sep. 24, 2012) (ALJ did not err in failing to include in RFC the specific words "moderate difficulties in concentration, persistence or pace" where decision showed judge considered those limitations in reaching the RFC determination); *Gonzalez v. Astrue*, No. 3:10-cv-2003-O-BF, 2012 WL 1058114, at *7 (N.D. Tex. Jan 26, 2012), *rec adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012) (same). In this case, the record establishes

that the ALJ included all the appropriate functional limitations in his RFC assessment.

And, even if Plaintiff could establish that the ALJ's RFC finding was erroneous, she has failed to establish prejudice. Plaintiff has not shown how the inclusion of additional limitations in her RFC would have eliminated any of the jobs identified by the vocational expert.

Nor has Plaintiff established reversible error with regard to the ALJ's reliance on the VE's testimony based on a hypothetical question that did not include an express limitation for a moderate restriction in the area of concentration, persistence, or pace. The ALJ was only obligated to reasonably incorporate in his hypothetical all of Plaintiff's disabilities that he recognized. *See Boyd*, 239 F.3d at 707. The ALJ found that Plaintiff was under no limitations in her ability to understand and carry out simple instructions and was under only moderate limitations in her ability to interact appropriately with the public, coworkers, and supervisors and her ability to respond appropriately to normal work situations and changes in a routine work setting. Administrative Record [Dkt. No. 19] at 17. The record reflects that the ALJ considered the limitation in concentration, persistence, or pace when determining Plaintiff's RFC and that this RFC finding is supported by substantial evidence. The ALJ was not required to expressly include a limitation for concentration, persistence, or pace in his hypothetical to the VE. *See Herring v. Astrue*, 788 F. Supp. 2d 513, 518 & n.2 (N.D. Tex. 2011) (holding that hypothetical reasonably incorporated limitations found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration

all impairments); *Gipson v. Astrue*, No. 3:10-cv-1413-BK, 2011 WL 540299, at *6-*7 (N.D. Tex. Feb. 11, 2011) ("Because the ALJ posed a hypothetical question that reasonably incorporated the disabilities she found Plaintiff had, the ALJ's finding that Plaintiff could perform other jobs in the national economy was supported by substantial evidence.").

*Medical Expert Testimony*

Plaintiff next contends that the ALJ improperly relied on the opinions of Dr. Felkins, a non-examining medical expert who testified at the second administrative hearing that Plaintiff is capable of "[a]t least simple work, if not more." Administrative Record [Dkt. No. 19] at 49. Dr. Felkins suggested that Plaintiff's low GAF scores may not be an accurate reflection of her actual level of functioning in light of other record evidence, including Plaintiff's reading scores and academic level. *See id.* at 49-50. Dr. Felkins also testified that she had personal experience with Mental Health Mental Retardation's ("MHMR") recording artificially low GAF scores to assist patients in obtaining and continuing treatment. *See id.* at 53-54. The ALJ relied on this testimony in determining that Plaintiff had the mental RFC to understand and carry out simple instructions and adapt to a routine work environment, while requiring superficial contact with the public and incidental interaction with coworkers and supervisors. *See id.* at 14, 18-19.

Plaintiff argues the ALJ erred in failing to enumerate the factors for evaluating medical opinion evidence when discussing Dr. Felkins's opinions. The social security regulations require an ALJ to examine a variety of factors in evaluating medical

opinions from nonexamining sources. *See* 20 C.F.R. § 404.1527(e). Among these factors are the nonexamining source's medical specialty and expertise in social security, the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, and the supporting explanations the medical source provides. *See id.*; SSR 96-6p, 1996 WL 374180, at *2 (SSA Jul. 2, 1996). However, there is no requirement for the ALJ to recite the full litany of factors in every case. *See Amilpas v. Astrue*, No. SA-09-cv-389-XR-NN, 2010 WL 2303302, at *5-6 (W.D. Tex. May 17, 2010), *rec. adopted*, 2010 WL 2756552 (W.D. Tex. Jul. 12, 2010) (ALJ complies with regulations if resulting decision reflects that consideration was given to testifying medical expert's opinion). The regulations merely require the ALJ to consider the medical opinion and give appropriate explanations for accepting or rejecting it. *See* SSR 96-5p, 1996 WL 374183, at *5 (SSA Jul. 2, 1996) (adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527 and provide appropriate explanations for accepting or rejecting such opinions).

Here, the ALJ clearly considered Dr. Felkins's opinions. In particular, the ALJ explained that Dr. Felkins's opinion that Plaintiff is capable of simple work is consistent with other evidence from treating sources that "mentally, [Plaintiff] has been able to function satisfactorily" and that her mental functioning could even improve if she were compliant with prescribed medications and other treatment recommendations. Administrative Record [Dkt. No. 19] at 19. This explanation satisfies the regulations' requirements.

Plaintiff further argues that the ALJ erred in finding Dr. Felkins to be a credible medical expert given her testimony that she ascribed artificially low GAF scores to patients when she worked as a psychiatrist for MHMR. At the hearing, Plaintiff's attorney examined Dr. Felkins regarding Plaintiff's GAF scores:

Q:    ... What GAF score has her treating sources generally given her?

A:    Below 50.

Q:    Okay. And what would that suggest?

A:    Serious symptoms, but also MHMR almost always gives GAF's like that to people in their treatment.

Q:    How do you know that?

A:    I worked at MHMR.

Q:    I don't understand. Can you explain – so, why does MHMR –

A:    Because if you're above a 50 you're not a priority population. You get kicked out of services.

                              * * *

Q:    So, I'm not sure I understand what you're saying. Are you saying that these scores are not accurate?

A:    In some cases they're not entirely accurate.

Q:    You said you worked for MHMR?

A:    I have, yes, several different ones.

Q:    You worked as a psychiatrist for MHMR?

A:    Yes.

> Q:    During your time at MHMR did you ever list a score
>       below what you felt the score should be?
>
> A:    Yes, I did.

Administrative Record [Dkt. No. 19] at 53-54. Following this exchange, Plaintiff's counsel moved to disqualify Dr. Felkins on grounds that she "perjured herself" by admitting to "falsifying medical records." *Id*. at 54.

The ALJ responded that he had heard similar testimony from other psychiatrists. He then inquired of Dr. Felkins:

> Q:    – about the GAF scores, and the GAF scores – doctor,
>       are the GAF scores subjective?
>
> A:    Yes, they are. They're highly subjective, and as a
>       matter of fact, the MHMR personnel would bring us
>       charts, and not just me, all of us, and say, okay, this
>       claimant will have to be discharged from services so
>       lower the GAF?
>
> Q:    And did you do that?
>
> A:    Yes, I did it for the ones that I thought, you know,
>       needed, could use their services, because I have
>       another oath, which is to do no harm to the patient.

*Id*. at 55. Ultimately, the ALJ denied counsel's motion to disqualify Dr. Felkins and gave her opinions significant weight stating: "Dr. Felkins is a medical doctor and board-certified psychiatrist, who has exercised her judgment on the medial issues in this matter in an impartial manner and who has offered opinions – as to both physical and mental limitations – that the undersigned finds consistent with the record in its entirety." *Id*. at 19.

An ALJ has broad discretion to determine medical experts' credibility and to weigh their opinions. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 90, 905 (5th Cir.1990). In an appropriate case, a disability determination may be based on the testimony of a medical expert who neither treated nor examined the claimant. *See Kindle v. Barnhart*, No. 1:03-cv-485, 2005 WL 588241, at *3 (E.D. Tex. Jan. 24, 2005). "This prerogative exists even when the medical expert's testimony conflicts with evidence from treating or consultative examining sources." *Id.*

Here, the ALJ found that Dr. Felkins's opinion that Plaintiff has the mental RFC to perform simple work with incidental contact with others was consistent with the record as a whole. *See* Administrative Record [Dkt. No. 19] at 18-19. The record demonstrates, among other things, that Plaintiff completed high school, reads on a high school level, and has performed work at the semi-skilled level. Evidence of Plaintiff's drug use and non-compliance with prescribed treatments supports the conclusion that low GAF scores are not an accurate reflection of Plaintiff's ability to function. Thus, the ALJ's determination that Dr. Felkins's opinions were entitled to significant weight is supported by substantial evidences and does not warrant remand.

*Vocational Expert Testimony*

Finally, Plaintiff challenges the ALJ's finding that she is not disabled because she has the RFC to perform jobs that exist in significant numbers in the national economy. At the second administrative hearing, the ALJ asked Jennifer Maginnis, a vocational expert, if there were jobs that could be performed by a hypothetical individual who is limited to work at the light exertional level, retains the ability to

understand and carry out "simple instructions," and requires only incidental interaction with coworkers and supervisors and no more than superficial contact with the public. Administrative Record [Dkt. No. 19] at 58. Maginnis initially responded that no jobs existed in the national economy for such an individual because the "simple instructions" limitation precludes jobs that require reasoning skills above "level 1." *See id*. The ALJ then clarified that his hypothetical was directed to an individual capable of performing simple, unskilled work involving a reasoning level of "1 or 2." *See id*. Maginnis answered that such an individual could work as a photo-copy machine operator, a cutter-paster of press clippings, or an addresser. *Id*. at 59. In his written decision, the ALJ found Plaintiff's RFC was limited to "simple instructions" but nonetheless concluded that she could work at the jobs identified by Maginnis and, thus, is not disabled. *Id*. at 21. Plaintiff now contends that the ALJ failed to establish that there is other work in the national economy that she can perform because an individual who is limited to understanding and carrying out "simple instructions," such as herself, cannot perform jobs that require a reasoning level of "2," including those identified by the vocational expert.

The *Dictionary of Occupational Titles* ("DOT") was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *See* DICTIONARY OF OCCUPATIONAL TITLES at xv (4th ed. 1991). The DOT, along with a companion volume – *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") – contain descriptions of the requirements for thousands of jobs in the national economy. Every

job description in the DOT includes a "general educational development" or "GED" designation describing the mental abilities that an employee needs to complete that job. GED "embraces those aspects of education (formal and informal) which are required of the worker...." DICTIONARY OF OCCUPATIONAL TITLES at 1009. The GED scale is comprised of six levels designating the "reasoning development," "mathematical development," and "language development" needed to perform jobs at that level. *See id.* at 1009-11. The DOT specifies that jobs with GED reasoning development level 1 require the ability to apply commonsense understanding to carry out *simple one- or two-step instructions* and deal with standardized situations with occasional or no variables in or from these situations encountered on the job. DICTIONARY OF OCCUPATIONAL TITLES app. C at 1011 (4th ed. 1991). Jobs with reasoning development level 2 require the ability to apply commonsense understanding to carry out *detailed but uninvolved written or oral instructions* and deal with problems involving a few concrete variables in or from standardized situations. *Id.*

Courts have repeatedly found that jobs with a GED reasoning development level 2 are consistent with limitations to simple instructions and routine tasks. *See, e.g.*, *Davis v. Astrue*., No. SAG-11-2279, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013) (Reasoning Level 2 consistent with a restriction to simple, routine tasks); *Castaneda v. Astrue*, No. EDCV 11-5080JEM, 2012 WL 528326, at *8 (C.D. Cal. Feb. 15, 2012) (same); *Lavendar v. Astrue*, No. 3:10-cv-5785-RJB, 2011 WL 3664892, at *12 (W.D. Wash. Jul. 28, 2011), *rec. adopted*, 2011 WL 3665002 (W.D. Wash. Aug. 19, 2011) (same)*; Gaspard v. Astrue*, 609 F. Supp. 2d 607, 617 n.22 (E.D. Tex. 2009) (same)

(citing cases); *Veal v. Astrue*, 618 F. Supp. 2d 600, 613 & n.32 (E.D. Tex. May 21, 2009) (same); *cf. Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no inconsistency between VE's testimony and the DOT when the VE identified a job that required a reasoning level of 3 in response to a hypothetical that described an individual who was limited to following "simple, concrete instructions").

The contrary authority relied on by Plaintiff is distinguishable because Plaintiff's cited cases address jobs that require a reasoning level of 2 *or higher* or an "SVP" of 2. The DOT defines "SVP," or "specific vocational preparation time," as "'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Sutton v. Astrue*, No. 3-08-cv-1117-L, 2010 WL 1685813, at *3 (N.D. Tex. Apr. 2, 2010), *rec. adopted*, 2010 WL 1685811 (N.D. Tex. Apr. 23, 2010) (quoting *Dikeman v. Halter*, 245 F.3d 1182, 1186 n. 2 (10th Cir. 2001)). The higher the SVP rating, the more time that is required for the worker to learn the job. *Id*. An SVP rating of 1 or 2 corresponds to unskilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). GED reasoning levels cannot be conflated with SVP ratings. *See Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 n. 3 (M.D. Fla. 2006) ("SVP relates to the vocational preparation required to perform a job ... GED reasoning level pertains to the complexity of a job."); *Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED ratings.").

There is no conflict between Plaintiff's RFC and the jobs identified by the vocational expert. Thus, there is no reversible error to warrant a remand.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 5, 2013

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE